OPINION OF THE COURT
Thomas P. Phelan, J.
By this action plaintiff seeks a declaration that a certain *618 homeowner’s policy issued by State Farm Fire and Casualty Co. (hereinafter referred to as State Farm) to plaintiffs father, Gennaro F. Pellegrino, affords plaintiff coverage in an underlying personal injury action in which he is named as a defendant, to wit, Miller v Pellegrino (Ct Common Pleas, Carbon County, Pa).
The parties have stipulated to discontinue the action against the other named defendants.
The homeowner’s policy names plaintiff’s father as the insured. Insofar as it is relevant, the policy provides as follows:
" ’Insured’ means you and the following residents of your household:
"a. your relatives, and
"b. any other person under the age of 21 who is in the care of any person noted above.” (Emphasis added.)
Nowhere does the policy provide a definition of the underlined passage.
At issue is whether plaintiff qualifies as a resident of his father’s household.
Plaintiff’s parents, Gennaro F. Pellegrino and Karen Pellegrino, married in October 1970 and divorced seven years later in November 1977. This union produced two children, Danielle, born October 20, 1971, and Michael, born August 22, 1973. Supreme Court, Kings County, granted custody of six-year-old Danielle and four-year-old Michael to Karen and visitation during the week and on weekends to Gennaro.
Gennaro visited with his children every Wednesday and each weekend while Karen continued to reside in Brooklyn. When she moved to Budd Lake, New Jersey, a few months after the divorce, Michael spent weekends in Brooklyn visiting with his father who resided with Michael’s paternal grandmother.
By the time Michael entered first grade, he resided with his mother in Tannersville, Pennsylvania. Michael visited his father in Brooklyn at least twice a month for a year and thereafter on every third weekend. Summertime visitation usually lasted two to three consecutive weeks until Michael reached age 14 or such time as he played organized baseball or held a summer job.
Gennaro remarried in 1983. He, together with his new wife and two children, moved to a three-bedroom house in 1986. Gennaro converted the garage to a fourth bedroom for Michael who kept clothing, his baseball card and matchbox car collec *619 tions, toiletries and jewelry in his father’s Staten Island home. Michael had his own key to the house and received mail from his baseball card club and Pennsylvania friends.
On one occasion after an argument between his mother and stepfather, Michael took a bus to New York City. Gennaro met him at the bus terminal and Michael resided in Staten Island until matters calmed in Tannersville.
While visiting with his father, Michael obtained a New York State Department of Environmental Conservation Hunter Education Certificate of Qualification in November 1989. His driver’s license, however, is from Pennsylvania.
On June 9, 1991, just prior to his eighteenth birthday, Michael, while operating a motorboat, collided with a jet ski being operated by plaintiff Miller in the Pennsylvania personal injury action.
At the time of the accident, Michael attended his senior year at Pocono Mountain High School. Later he entered the University of Pennsylvania, East Stroudsberg Campus, at a Pennsylvania resident tuition rate.
DISCUSSION
At first blush, the Court of Appeals holding in Matter of Aetna Cas. & Sur. Co. v Gutstein (80 NY2d 773) appears dispositive of the issue here. In Matter of Aetna Cas. & Sur. Co. v Gutstein, the Court of Appeals found that the parent Gutstein’s insurance policy did not afford coverage to his son as a "resident” of the parents’ household. In doing so, the Court reversed the Appellate Division, Second Department (169 AD2d 718), which itself had reversed the finding of the Judicial Hearing Officer who conducted the evidentiary hearing.
The Second Department determined that the evidence supported a reasonable conclusion that Gutstein’s son maintained a residence at his father’s home notwithstanding a rental apartment in New York City. The son spent a substantial amount of time at his father’s home; he maintained his own room there; he kept clothes, books and records there as well as had his own key, came and went as he wished and frequently stayed overnight.
Gutstein’s son also listed his father’s home on his voter registration, driver’s license and Federal and State income tax returns. He received mail there and appeared on the insurance policy’s declaration page as the principal operator of one of his father’s cars.
*620 In reversing the Appellate Division, the Court of Appeals succinctly wrote as follows:
"Under the facts of this case as found by Supreme Court, respondent, who maintained an apartment in Manhattan where he resided more than 80% of the time, is not a covered person entitled to uninsured motorist benefits under his father’s insurance policy. The policy provides such coverage only for a 'family member’, defined in the policy as 'a person related to [the insured] by blood, marriage or adoption who is a resident of [the insured’s] household’.
"Although respondent stored some belongings in his parent’s New Jersey house and spent the night there occasionally, we conclude that Supreme Court’s finding that respondent was not a resident of his father’s household more nearly comports with the weight of the evidence than does the Appellate Division’s contrary finding.” (80 NY2d, at 775, supra.)
On balance therefore, it would appear that plaintiff herein spent no more time nor had any greater residential status in his father’s home than did the respondent son in Gutstein (supra).
The court rejects such a cursory interpretation of Matter of Aetna Cas. & Sur. Co. v Gutstein (supra) and finds it distinguishable in two critical aspects.
Plaintiff herein at the time he was involved in the underlying accident was still a minor child, whereas the respondent "child” in Gutstein (supra) reached the age of majority as evidenced by his status as a registered voter. Also, plaintiff’s time spent with his father was in furtherance of the firmly established public policy of this State which favors the frequent and meaningful visitation between a noncustodial parent and child so as to promote guidance, counsel, comfort and solace (Daghir v Daghir, 82 AD2d 191, 193-194, affd 56 NY2d 938; Weiss v Weiss, 52 NY2d 170, 174-175).
Regardless of whether one would characterize the amount of time spent between plaintiff herein and his father as "occasional” (Matter of Aetna Cas. & Sur. Co. v Gutstein, 80 NY2d 773, 775, supra) or "substantial” (Matter of Aetna Cas. & Sur. Co. v Gutstein, 169 AD2d 718, 719, supra), the nature of plaintiffs presence in the home of his father takes on significance plainly absent from that in Matter of Aetna Cas. & Sur. Co. v Gutstein.
Unlike the circumstances in D’Amico v Pennsylvania Miller Mut. Ins. Co. (72 AD2d 783, affd 52 NY2d 1000), cited by *621 respondents, there is absolutely nothing to suggest that plaintiff herein ever intended to abandon his residence with his father. To the contrary, and by all indications, plaintiff’s principal residency with his mother stemmed from his parents’ divorce and the resultant impossibility of living with both parents full time.
Inasmuch as the law recognizes the ability of an individual to retain residency at more than one location for purposes of insurance coverage (Nationwide Ins. Co. v Allstate Ins. Co., 181 AD2d 1022), it would be wholly inappropriate to impute any intention by plaintiff to abandon the home of his father, the noncustodial parent, following a divorce where plaintiff and his father managed to sustain precisely the type of regular and meaningful contact that is the hope and goal of every court which issues a divorce decree which includes provision for visitation.
The foregoing conclusion is further buttressed by the holding in Matter of Allstate Ins. Co. (Luna — MVAIC) (36 AD2d 622) wherein an unemancipated child unilaterally removed by his mother from the formerly intact marital home was found entitled to coverage under the provisions of the father’s uninsured motorist endorsement with his carrier. While the policy afforded coverage only to the "named insured and, while residents of the same household, his spouse and the relatives of either”, the fact that the child had been removed from his father’s household without his consent was found incapable of abrogating the child’s status as a covered member of said household.
No less protection should be afforded to the plaintiff herein given the significant presence of this child in his father’s household notwithstanding his parents’ marital circumstances.
CONCLUSION
For the foregoing reasons, the court finds in favor of plaintiff and declares that defendant State Farm Fire and Casualty Co. is obligated to defend and indemnify plaintiff in the underlying personal injury action titled Miller v Pellegrino (supra).